**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| NATASHA DALLEY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 15–cv-0875 (KBJ) |
| MITCHELL RUBENSTEIN & ASSOCIATES, P.C. | ) ) ) | |
| Defendant. | ) ) ) | |

## **MEMORANDUM OPINION**

On June 9, 2014, Defendant Mitchell Rubenstein & Associates, P.C. ("MRA") filed a lawsuit against Plaintiff Natasha Dalley in the Superior Court of the District of Columbia, seeking to recover the amount that Dalley owed on a defaulted 2002 student loan. MRA's lawsuit was stayed on November 6, 2014, after Dalley filed for Chapter 7 bankruptcy. Dalley then turned the tables on MRA: she brought the instant lawsuit, arguing that MRA's prosecution of the aforementioned civil action violated the Fair Debt Collecting Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, and the District of Columbia Debt Collection Law ("DCDCL"), D.C. Code § 28-3814, and also that it amounted to common law abuse of process. (*See generally* 2d Am. Compl., ECF No. 7.)

Before this Court at present is MRA's motion to dismiss Dalley's second amended complaint under Federal Rule of Civil Procedure 12(b)(1). (*See* Def.'s Mot. to Dismiss 2d Am. Compl. ("Def.'s Mot."), ECF No. 11.) MRA alleges, among other

1

things, that Dalley lacks standing to sue because the right to bring this lawsuit to recover damages for alleged violations of federal and state collections practice laws was transferred to the trustee of the bankruptcy estate when Dalley voluntarily petitioned for Chapter 7 bankruptcy, and this property right has not been abandoned by that trustee to date. (*See id*. at 17.)[1] In response, Dalley contends that she has standing to bring her FDCPA claims notwithstanding the bankruptcy, because her claims were exempted from her bankruptcy estate under the "wild card" exemption in the bankruptcy code and also because her FDCPA claims qualify as "payment[s] . . . on account of personal bodily injury[.]" (*See* Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), ECF No. 12, at 5–6.)

For the reasons explained below, this Court concludes that Dalley lacks standing to file the instant action in federal court, and as a result, MRA's motion to dismiss under Rule 12(b)(1) for lack of standing will be **GRANTED**. A separate order consistent with this Memorandum Opinion will follow.

## I.   BACKGROUND

### A.   Facts

On behalf of the National Collegiate Student Loan Trust ("NCSLT"), MRA filed a lawsuit against Dalley in Superior Court on June 9, 2014. (*See* 2d Am. Compl. ¶¶ 9, 11.) MRA's Superior Court complaint claimed that Dalley had defaulted on a private student loan in 2002, and it sought to recover the principal and accrued interest with respect to that loan. (*See id.* ¶ 9; Aff. of Natasha Dalley ("Dalley Aff."), ECF No. 13, ¶ 6.) Dalley alleges that, because of MRA's lawsuit, she was forced to "file[] for

---

[1] Page numbers herein refer to those that the Court's electronic case filing system automatically assigns.

Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the District of Columbia." (*See* 2d Am. Compl. ¶ 14.)  Dalley's voluntary bankruptcy petition, which was filed on October 18, 2014, did not list any outstanding lawsuits or other causes of action in the Schedule B itemization of assets or in the Schedule C claims of exempt property.  (*See* Voluntary Bankr. Pet., Ex. B to Pl.'s Opp'n, ECF No. 12-2, at 2–4, 10–15.)

On November 6, 2014, "the [Superior] court stayed NCSLT's lawsuit" in light of Dalley's Chapter 7 voluntary petition (*see* Bankr. Mot. for Sanctions, Ex. E to Pl.'s Opp'n, ECF No. 12-5, at 2–3), which halted the loan-recovery proceedings by operation of law.  *See In re McGuirl*, 349 B.R. 759, 760 (D.D.C. 2006) ("The filing of a petition for bankruptcy relief triggers an automatic stay that prohibits unilateral actions against the debtor or property of the debtor's estate." (citing 11 U.S.C. § 362)).  Then, on January 27, 2015, the bankruptcy court discharged Dalley's debts in the context of the Chapter 7 proceedings, thereby closing her bankruptcy case.  (*See* Bankr. Ct. Discharge of Debtor Order, Ex. B to Def.'s Mot., ECF No. 11-4, at 1.)

### B. Procedural History

Approximately five months later, on June 9, 2015, Dalley filed the instant lawsuit against MRA.  Dalley's second amended complaint alleges that MRA's debt-collection lawsuit was time-barred because it was filed "three days after the three-year statute of limitations [had] expired" (2d Am. Compl. ¶ 11), and that NCSLT "never had the legal capacity" to sue Dalley—or to authorize MRA to sue Dalley—to recover the loan amount.  (*Id*. ¶ 22.)  Furthermore, according to Dalley, the filing of this purportedly untimely and unauthorized civil action was tantamount to an unlawful debt collection practice.  Accordingly, Dalley alleges that MRA intentionally, willfully, and

3

maliciously violated several subsections of the FDCPA (Count One) and the DCDCL (Count Two), and that the filing of MRA's lawsuit also amounted to abuse of process (Count Three).  (*See id*. ¶¶ 25–47.)

On July 20, 2015, MRA filed a motion to dismiss Dalley's second amended complaint for lack of jurisdiction under Rule 12(b)(1), alleging that Dalley does not have standing to sue because, "even though this pre-petition claim was not specifically listed on Dalley's bankruptcy schedules," it nonetheless and necessarily became the property of the bankruptcy estate when she petitioned for Chapter 7 bankruptcy, and having not abandoned that claim, the bankruptcy trustee remains the only one with standing to pursue it. (Def.'s Mot. at 17.)  In addition, MRA's motion to dismiss argues that the doctrine of judicial estoppel bars Dalley from bringing this lawsuit because she excluded the cause of action from her list of assets in the bankruptcy proceeding in bad faith, and the intentional omission is inconsistent with the position she has taken before this Court.  (*See id*. at 17–21.)  *See also Frese v. Empire Fin. Servs.*, 725 F. Supp. 2d 130, 140 (D.D.C. 2010) (explaining that "judicial estoppel is appropriate when a debtor fails to identify a claim in a bankruptcy proceeding" thereby taking the position that she holds no actionable claim, "and then proceeds to assert that claim in a separate judicial action" in direct contravention to her bankruptcy position).  Dalley has responded to MRA's motion to dismiss—focusing solely on the FDCPA count, she asserts that she has standing to sue because her "FDCPA claims" are "personal bodily injury claims" that are "exempted from estate property under [section] 522(d)(11)" of the bankruptcy

4

code and under section 522(d)(5)'s "wild card" exemption. (Pl.'s Opp'n at 5–6.).[2] MRA's motion to dismiss for lack of standing is now ripe for this Court's review.

## II. LEGAL STANDARD

A motion to dismiss for lack of standing alleges a defect in the court's subject matter jurisdiction and is properly addressed under Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). To defeat a motion to dismiss brought under Rule 12(b)(1), a plaintiff bears the burden of "set[ting] forth allegations sufficient to establish the court's jurisdiction over the subject matter of the claims presented." *Evans v. First Mount Vernon, ILA*, 786 F. Supp. 2d 347, 351 (D.D.C. 2011). In deciding such a motion, the court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff"; however, it need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Id.* (internal quotation marks and citations omitted). Furthermore, "[i]n 12(b)(1) proceedings, it has been long accepted that the judiciary may make appropriate inquiry beyond the pleadings to satisfy itself on authority to entertain the case." *Haase*, 835 F.2d at 906 (internal quotation marks and citation omitted).

---

[2] As noted, Dalley's response to MRA's standing argument addresses whether she can bring *an FDCPA claim* notwithstanding the bankruptcy, and does not purport to mention the issue of standing in regard to the claims she has alleged under the DCDCL and common law. It is not clear whether Dalley intends for her standing arguments to relate to all three counts of her complaint, and her reasons for parsing the claims in this fashion when responding to defendant's lack-of-standing contention are not immediately apparent to this Court. Nevertheless, the Court treats Dalley's silence with respect to MRA's assertion that she lacks standing to bring DCDCL and abuse of process claims as a concession on Dalley's part that she has no standing to pursue those claims. *See Rosenblatt v. Fenty*, 734 F. Supp. 2d 21, 22 (D.D.C. 2010) ("[A]n argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded."). For that reason, this Memorandum Opinion reaches and resolves the only contested issue related to standing: whether Dalley lacks standing to pursue the claims raised in the complaint's FDCPA count.

## III. ANALYSIS

MRA argues that the FDCPA claims that Dalley brings in Count One of the instant lawsuit became part of the bankruptcy estate when Dalley filed for Chapter 7 bankruptcy, despite the fact that Dalley omitted those claims from the list of assets in the bankruptcy schedules, and that the trustee has not abandoned those claims such that Dalley has standing to pursue them. (*See* Def.'s Mot. at 9–13, 17.) Thus, according to MRA, the bankruptcy trustee is the only party with standing to bring the instant lawsuit. (*See id.* at 13, 17.) For the reasons explained below, and assuming for the purpose of this analysis that Dalley has forfeited any objection to MRA's standing argument with respect to the DCDCL and abuse of process claims (*see supra* note 2), this Court agrees with MRA.

### A.   Dalley's Cause Of Action Is Part Of Her Bankruptcy Estate

It is well established that, upon the filing of a Chapter 7 bankruptcy petition, "all legal or equitable interests, including causes of action on behalf of the debtor, are transferred from the debtor to the bankruptcy estate." *Marshall v. Honeywell Tech. Solutions, Inc.*, 675 F. Supp. 2d 22, 24 (D.D.C. 2009) (citing 11 U.S.C. § 541(a)(1)); *see also Robinson v. District of Columbia*, 10 F. Supp. 3d 181, 187 (D.D.C. 2014) (explaining that "[t]he debtor need not know all the facts *or even the legal basis* for the cause of action; rather, if the debtor has enough information . . . to suggest that it may have a possible cause of action, then that is a known cause of action such that it must be disclosed" in the bankruptcy schedules and considered part of the bankruptcy proceeding (emphasis and alterations in original) (internal quotation marks and citation omitted)). Furthermore, once a pre-petition cause of action becomes part of a bankruptcy estate, the debtor's legal rights and interests in that legal action—including

6

the standing to pursue it—transfer to the bankruptcy trustee, who is acting on behalf of the estate. *See Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 795 (D.C. Cir. 2010); *see also In re Bailey,* 306 B.R. 391, 392 (Bankr. D.D.C. 2004) ("In a chapter 7 bankruptcy case, any unliquidated lawsuits initiated by a debtor prepetition (or that could have been initiated by the debtor prepetition) become part of the bankruptcy estate subject to the sole direction and control of the trustee, unless exempted or abandoned or otherwise revested in the debtor.").

Dalley's claim against MRA for violations of the FDCPA accrued before she filed the petition for bankruptcy on October 18, 2014, because MRA's debt-recovery action preceded Dalley's bankruptcy filing, and "[t]he FDCPA protects (1) consumers (2) who have been subjected to abusive, deceptive or unfair debt collection practices (3) by a debt collector (4) in an attempt to collect a debt." *Muldrow v. EMC Mortg. Corp.*, 657 F. Supp. 2d 171, 174–75 (D.D.C. 2009). Although Dalley attests in her affidavit that she did not "know" that she had a legal claim against MRA until after she filed for bankruptcy (*see* Dalley Aff. ¶ 11), the facts alleged in the complaint, along with the accompanying documents in the record, demonstrate that Dalley had more than enough information when she petitioned for bankruptcy to suggest a possible FDCPA claim against MRA based on the underlying litigation in Superior Court.

Specifically, Dalley was aware that she was a "natural person obligated or allegedly obligated to pay any debt[,]" 15 U.S.C. § 1692a(3), and thus, qualified as a consumer under the FDCPA. In addition, Dalley knew that MRA had attempted to collect the loan debt by filing a suit against her in Superior Court on June 9, 2014. (*See* Super. Ct. Compl., Civ. No. 14-0004281, Ex. A to Pl.'s Opp'n, ECF. No. 12-1, at 2.)

She also knew, or should have known, that MRA's lawsuit could be characterized as "abusive, deceptive or unfair" because (1) NCSLT purportedly did not have the capacity to sue her or to authorize MRA to sue her (*see* Dalley's Answer to Super. Ct. Compl., Ex. A to Def.'s Reply, ECF No. 14-1), and (2) she allegedly had made the last payment on the loan in 2008, over three years before MRA's lawsuit, which was apparently beyond the applicable statute of limitations (*see* Dalley Aff. ¶ 7).  Thus, when Dalley petitioned for bankruptcy four months after MRA filed suit, the facts known to her were sufficient to give rise to an obligation to disclose a possible FDCPA claim against MRA, even if she was not specifically aware of the legal basis for such action.  Consequently, MRA is correct that the pre-petition FDCPA claim was a known asset of Dalley's that became part of the bankruptcy estate upon her filing of a voluntary petition under Chapter 7.  (*See* Def.'s Mot at 17; Def.'s Reply at 5–6.)

Undaunted, Dalley asserts that her FDCPA claims were not part of her bankruptcy estate because they were expressly exempted either under 11 U.S.C. § 522(d)(11)(D)—a statutory provision that allows a debtor to schedule some payments as exempt "on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss"—or under the "wild card" exemption that applies to certain assets, including legal claims, as set forth in § 522(d)(5).  (*See* Pl.'s Opp'n at 5–6 (citing section 522(d)(5), which exempts a debtor's "aggregate interest in any property" up to certain amounts that are automatically and periodically adjusted over time).)  But Dalley's second amended complaint does not allege that Dalley suffered any personal bodily injury as a result of MRA's debt-collection efforts; furthermore, in this context, the wildcard exemption relates only to a debtor's ability to

8

recover some, or all, of the proceeds of a legal claim if *the trustee* successfully litigates that claim, and it does *not* vest in the debtor any legal right to pursue the claim herself. *See In re Fetner*, 218 B.R. 262, 264 (Bankr. D.D.C. 1997) (explaining that the wild card exemption for legal claims "is simply an interest in any potential recovery from the lawsuit, . . . not an absolute right to retain the lawsuit" and that "[i]t is the trustee who has the capacity to prosecute a lawsuit on behalf of the estate" (internal quotation marks and citation omitted)). What is more, even if Dalley's exemption arguments were meritorious, it is clear that claiming exemption from the bankruptcy estate *now*, long after the bankruptcy proceedings have concluded, cannot give rise to standing to sue when the debtor failed to list the cause of action in her bankruptcy schedules prior to commencing the lawsuit. *See Yelverton v. District of Columbia*, 529 B.R. 1, 4 (D.D.C. 2014) (explaining that "claiming an exemption" for a cause of action after filing suit does not "retroactively provide a debtor with standing").

Thus, this Court easily concludes that, because Dalley failed to list the FDCPA claims that she relates in Count One of her second amended complaint in the context of the bankruptcy proceeding, and also because the alleged exemptions do not appear to permit Dalley to file the FDCPA claims that she seeks to bring here in any event, Dalley's FDCPA claims became the property of her bankruptcy estate upon her Chapter 7 filing, which means that Dalley does not have standing to pursue those claims in this Court, unless the trustee abandoned them.

**B.   Nothing In The Complaint Or The Record Establishes That The Bankruptcy Trustee Abandoned Dalley's FDCPA Claims**

Under well-settled law, title to claims that have been transferred to the bankruptcy estate to be handled by the trustee remains in the estate *unless the cause of*

9

*action is abandoned* back to the debtor pursuant to § 554 of the Bankruptcy Code. *See* 11 U.S.C. § 554(d). "Abandonment" is a term of art, and the limited circumstances under which abandonment can be deemed to have occurred are delineated in § 554 of the Bankruptcy Code, which states, in pertinent part:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

11 U.S.C. § 554. This statute plainly establishes that there are three instances in which a cause of action that is part of the bankruptcy estate may be considered "abandoned" by the trustee and thus may be pursued by the debtor: (1) when the trustee, upon his or her own volition, provides the interested parties with formal notice of the abandonment and an opportunity to be heard; (2) when the bankruptcy court, upon request of an interested party, orders the trustee to abandon the cause of action after formal notice and a hearing; and (3) when the cause of action has been disclosed and scheduled as an asset by the debtor but not administered by the trustee before closing of the bankruptcy case—"*i.e.*, [when the trustee] does nothing to pursue the action, it will then be deemed abandoned by operation of law[,]" *Wissman v. Pittsburgh Nat'l Bank*, 942 F.2d 867, 873 (4th Cir. 1991).

As for the relevant timing, "[i]t may be the case that abandonment of litigation claims retroactively returns the claims to the debtor as of the date [s]he files for

bankruptcy[,]" *Yelverton*, 529 B.R. at 3 (emphasis omitted), and thus, a plaintiff such as Dalley might arguably "retroactively obtain[] standing" to sue based on a trustee's subsequent abandonment of a cause of action, *id*. But "[w]here nothing in the record shows that a trustee [ever] abandoned a debtor's cause of action, dismissing a complaint brought by the debtor for lack of standing is proper." *Marshall*, 675 F. Supp. 2d at 26; *see also Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004) (stating that lack of standing, and not judicial estoppel, is the more appropriate defense where a debtor brings a claim that was not abandoned by the trustee).

So it is here. Dalley's second amended complaint does not specifically allege that the FDCPA cause of action was abandoned by any of the three established methods, nor does the record reveal any facts that demonstrate abandonment occurred with respect to the FDCPA claims at issue here. That is, there are no alleged facts that, if taken as true, demonstrate that the bankruptcy trustee voluntarily undertook to provide notice and to have a hearing to accomplish abandonment of Dalley's FDCPA claims per subsection (a), *see* 11 U.S.C. § 554(a), and there is neither allegation nor evidence that any interested party requested a court order of abandonment with respect to Dalley's FDCPA claim pursuant to subsection (b) after notice and a hearing, *see id*. § 554(b). Furthermore, it is clear that Dalley cannot rely upon subsection (c)—which provides for abandonment by operation of law upon the closing of a bankruptcy case—because it is undisputed that she failed to schedule her FDCPA claim as an asset before the closing of her case in January of 2015. *See id*. § 554(c). There is no question that "assets that [a bankruptcy petitioner] had[] as of the date of filing [bankruptcy], *but that she did not add to her schedule*, were not abandoned to her when the case was closed [*i.e.*, they

11

remained part of the bankruptcy estate], regardless of whether the failure to formally schedule the cause of action was innocent." *Marshall*, 675 F. Supp. 2d at 25 (emphasis added); *see also Locapo v. Colsia*, 609 F. Supp. 2d 156, 159 (D.N.H. 2009) ("[O]nce a bankruptcy case closes through administration of the estate, the debtor loses his rights in a cause of action he had at the time he sought bankruptcy protection but nevertheless failed to list on his schedule."). Thus, the mere fact that Dalley's bankruptcy case closed without administration of her unscheduled FDCPA claim does not mean that her FDCPA claims were abandoned by the trustee such that she is free to bring them in Court now.[3]

The thrust of all this is quite conveniently summarized in the express terms of section 544 of Title 11 of the United States Code, which states that "[u]nless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate." 11 U.S.C. § 544(d). This Court has already found that Dalley's FDCPA claims became the property of her bankruptcy estate when she filed for Chapter 7 bankruptcy, *see supra* Part III.A, and even though those claims remained unadministered at the time Dalley's bankruptcy case closed, there is nothing in Dalley's complaint or in the record that establishes that the bankruptcy trustee ever abandoned those claims. Consequently, there is no basis upon

---

[3] If Dalley's assertion that she amended the Schedule C bankruptcy form to include the FDCPA claim at some point *after* the filing of the instant lawsuit (*see* Pl.'s Opp'n at 7) was intended to establish her right to sue, this Court finds that it does not do so. While it is clear beyond cavil that causes of action that a trustee has *actually* abandons generally revert to the debtor, *see Moses*, 606 F.3d at 795, the mere fact that a debtor lists a claim as exempt in her bankruptcy schedules at some point after filing a lawsuit regarding the claim does not result in actual abandonment. *See Yelverton*, 529 B.R. at 3 (explaining that filing amended schedules to list the cause of action as exempt after bringing suit and after the bankruptcy case closed, does not suffice; rather, the debtor must follow section 554's requirements to "compel a trustee to abandon").

12

which this Court can conclude that Dalley has standing to bring the instant FDCPA action.

## IV.     CONCLUSION

When a debtor files for Chapter 7 bankruptcy, she loses the legal standing to bring a lawsuit regarding a pre-petition cause of action that she did not disclose in her bankruptcy filings, unless or until the trustee abandons that cause of action. Dalley's undisclosed FDCPA claims arose prior to her Chapter 7 bankruptcy declaration and nothing in the complaint or the record establishes that the bankruptcy trustee abandoned those claims such that Dalley has standing to pursue them in this Court. Therefore, this Court lacks subject-matter jurisdiction over Dalley's complaint, and as set forth in the accompanying order, MRA's motion to dismiss will be **GRANTED**.

DATE: March 18, 2016

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge